UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMARA WOLF, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-01560 |
| | § | |
| LOWE'S COMPANIES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants Lowe's Companies, Inc. & L.L.C.'s ("Lowe's") Motion for Summary Judgment (Doc. #17), Plaintiff Tamara Wolf's ("Wolf") Response (Doc. #18), and Defendants' Reply (Doc. #19). After considering the parties' arguments and applicable legal authority, the Court grants Defendants' Motion for Summary Judgment.

**I.     Background**

This case arises from the termination of Wolf from her employment with Lowe's. Wolf worked as a salesperson at Lowe's from March 2005 until her termination on August 22, 2014. Doc. #9 at 1. She began her employment as a Sales Specialist in 2005. In August 2012, she transferred to the Lowe's store in League City, Texas, as a Pro Services Sales Specialist. Near the end of her time at Lowe's, Wolf alleged that she became ill and was diagnosed with major depressive disorder and attention deficit disorder, as well as cerebral palsy, polyarthritis, and fibromyalgia which affected her work attendance. *Id.* at 2–3. Wolf told her supervisors in the spring of 2014 that she was diagnosed with major depressive disorder and attention deficit disorder. Doc. #18, Ex. 2 at ¶ 4. She also informed Lowe's Human Resources by submitting two doctor's notes from a psychiatrist dated April 16, 2014 and May 21, 2014. *Id.*, Ex. G; Ex. H.

Human Resources guided Wolf through the process of applying for FMLA leave and she was subsequently granted intermittent FMLA leave beginning April 11, 2014. Doc. #18, Ex. Q.

Prior to Wolf informing Lowe's of her illness, she had received a disciplinary "final notice" on December 7, 2013, due to excessive attendance problems. Doc. #17, Ex 4 at 5. A "final notice" is the last disciplinary step before termination under Lowe's Corrective Action Procedure. Doc. #17 at 1. Prior to December 2013, Wolf was warned through several past performance evaluations and notifications about her excessive absence and tardiness dating back to November 9, 2005. Doc. #17, Ex. 4. In addition to tardiness and absenteeism, Wolf failed to update her accounts, failed to send weekly sales recaps on time, and worked outside of scheduled hours without permission. Doc. #17 at 3; Ex. 4; Ex. 5.

Wolf contends that prior to her illness she received positive reviews and that she was terminated because of her illness, alleging disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, *et seq.* and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Lowe's now moves for summary judgment on Wolf's claims.

## II.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the burden of the non-movant to "identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The Court views the evidence in the light most favorable to the non-movant. *Id.* at 1537. "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. Analysis

### 1. ADA Discrimination Claim

The ADA prohibits employers from discriminating against an employee on the basis of a disability as defined by the Act. 42 U.S.C. § 12112(a). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Wolf has not provided direct evidence of discrimination; therefore, the Court analyzes the evidence under *McDonnell Douglas*.

Under *McDonnell Douglas*, Wolf must make a prima facie case of discrimination by showing: (1) she had a disability; (2) she was qualified for the job; and (3) there was a causal connection between an adverse employment action and her disability. *LHC Grp.*, 773 F.3d at 697. The evidence presented reveals that Wolf was excessively tardy and absent from work during the entire duration of her employment. *See* Doc. #17, Ex. 4. Wolf herself admitted that her attendance was an issue throughout her employment at Lowe's and that she was written up for it repeatedly since the beginning of her employment. Doc. #17, Ex. 1 at 52–53. Even the document Wolf refers to as a positive work evaluation points to her attendance problems. Doc. #18, Ex. I at 4. The Fifth Circuit has held that because regular attendance is an essential function of a job, a plaintiff who is excessively tardy and absent from work is not qualified to perform her job and therefore cannot prevail on an ADA claim. *Hypes v. First Commerce Corp.*, 134 F.3d

721, 727 (5th Cir. 1998). In addition to her attendance issues, the evidence reveals that Wolf was deficient in completing her assigned work tasks, namely contacting her accounts and submitting her weekly recaps in a timely manner. Doc. #17, Ex. 4; Ex. 5; Ex. 7 at 6. "An essential element of any job is the ability to appear for work and to complete assigned tasks within a reasonable period of time." *Hypes*, 134 F.3d at 727 (citing *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996)). Therefore, Wolf was not qualified to perform her job, and thus she cannot prevail on her claim of discrimination under the ADA.

### 2. ADA Failure to Accommodate Claim

A prima facie claim for failure to accommodate requires that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Neely v. PSEG Tex., Ltd.*, 735 F.3d 242, 247 (5th Cir. 2013). The ADA does not require an employer to accommodate an employee who is not qualified for the job. *Hypes v. First Commerce Corp.*, 134 F.3d 712, 716 (5th Cir.1998). An employee's work attendance is an essential function of most jobs, especially when the position is interactive and involves a significant degree of teamwork. *Credeur v. La.*, 860 F.3d 785, 793 (5th Cir. 2017) (citations omitted). Wolf worked in a sales position at Lowe's which required interaction and follow-up with customers, as well cooperation and coordination with the sales team. Doc. #17, Ex. 5; Ex. 7. As discussed above, Wolf is not "qualified" under the ADA, because she is unable to "perform the essential functions" of her sales job at Lowe's—due to her tardiness, absenteeism, and failure to complete other tasks essential to her job—"with or without reasonable accommodation." 42 U.S.C. § 12111(8). Therefore, because Wolf has not demonstrated that she was qualified for her job, she cannot prove a prima facie claim of failure to accommodate.

### 3. FMLA Claim

FMLA protects employees from retaliation or discrimination for exercising their rights under FMLA. *Mauder v. Metro. Transp. Auth.*, 446 F.3d 574, 580 (5th Cir. 2006) (citations omitted). To establish a prima facie case of FMLA retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) the employer took an adverse action; and (3) a causal link between the protected activity and adverse employment action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). When there is no direct evidence of discriminatory intent, the Court applies the *McDonnell–Douglas* burden shifting framework to determine whether an employer discharged an employee in retaliation for participating in FMLA. *Id.* When evaluating whether the adverse employment action was causally related to the FMLA protection, the court considers the 'temporal proximity' between the FMLA leave, and the termination. *Id.* However, temporal proximity is alone insufficient to prove the "causal link" between protected activity and an adverse employment action. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)

Wolf had a long disciplinary history throughout her nine years at Lowe's. Doc. #17, Ex. 4. The only evidence of retaliation that Wolf presents is that she was put on performance improvement plans and was then fired four months after being approved for intermittent FMLA leave. Doc. #18 at 13–14. "The Fifth Circuit has held that temporal proximity between protected activity and the alleged adverse employment action, by itself, is insufficient to create a genuine issue of material fact for the element of causation." *Cephus v. Tex. Health & Human Servs. Comm'n*, 146 F. Supp.3d 818, 832 (S.D. Tex. Nov. 19, 2015). There must be a combination of suspicious timing along with other "significant evidence of pretext" in order to survive summary judgment. *Myers v. Crestone Int'l., L.L.C.*, 121 F. App'x 25, 28 (5th Cir. 2005). Without more

than timing allegations, and based upon Lowe's legitimate non-discriminatory reasons for Wolf's termination, summary judgment in favor of Lowe's is proper. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807–08 (5th Cir. 2007) (citing *Roberson v. Alltel Info. Serv.*, 373 F. 3d 647, 656 (5th Cir. 2004).

**IV.   Conclusion**

Wolf failed to raise a fact issue that she was terminated for any reason other than those given by Lowe's: her tardiness, absenteeism, and inability to meet deadlines for completion of her account calls and reports essential to her job position. For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

It is so ORDERED.

MAR 1 3 2019
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge